**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**NATALIA H.,**

**Plaintiff,** **25-CV-407Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for disability benefits with the Social Security Administration ("SSA"), on September 22, 2022, alleging disability beginning December 24, 2020, at the age of 38, due to post-traumatic stress disorder ("PTSD"), panic attacks, agoraphobia, back injuries, panic disorder, stress induced urticaria, incontinence, high blood pressure, anxiety disorder and depression. Dkt. #5 p.183.

On March 25, 2024, plaintiff appeared by telephone with counsel and testified, along with an impartial vocational expert ("VE"), James Soldner, at an

administrative hearing conducted by video before Administrative Law Judge ("ALJ"), Trina Moore. Dkt. #5, pp.143-176. As relevant to the issues currently presented, plaintiff testified that she had completed a two-year degree in science and information technology and had previous work experience as a customer service representative. Dkt. #5, pp.147-150. She experiences anxiety attacks on a daily basis and always feels as though she is on the verge of a panic attack. Dkt. #5, p.155. As a result, she avoids huge crowds of people and only goes out at night. Dkt. #5, p.156. When she is in the depressive stage of bipolar disorder, she stays in bed a lot and doesn't eat or shower. Dkt. #5, p.156. When she is in a manic stage, she becomes emotional and cries until her eyes swell shut. Dkt. #5, p.157. She has trouble concentrating and is often told to refocus. Dkt. #5, p.159. Plaintiff's sister helps her to slow her racing thoughts. Dkt. #5, p.169. She experiences flashbacks, cries a lot and is emotionally unstable. Dkt. #5, p.160.

Plaintiff testified that she does not get along with anybody, explaining that she is very assertive and aggressive, which has caused her to lose a lot of her friends and leave jobs. Dkt. #5, pp.158-159. She has difficulty trusting people and feels that people are threatened by her because she snaps at people and tells people the truth, what they don't want to hear. Dkt. #5, p.167. She described numerous complaints and lawsuits that she has commenced against her former employer, property manager, housing authority, internet provider, and her daughter's school district. Dkt. #5, pp.165-167.

When asked to assume an individual with plaintiff's age, education, and past relevant work experience who was capable of performing light work with, *inter alia*, the ability to carry out simple, routine tasks on a continuous basis with simple instructions and simple work-related decisions; no assembly line or production rate pace work; no work in tandem; occasional interaction with coworkers and supervisors; no constant interaction with the public in a customer service setting; and the ability to tolerate occasional changes in work setting and work processes, the VE testified that such an individual would be able to work as a mail clerk or housekeeping cleaner, each of which were unskilled, light exertion positions. Dkt. #5, pp.171-172.

The ALJ rendered a decision that plaintiff was not disabled on April 9, 2024. Dkt. #5, pp.121-135. The Appeals Council denied review on March 6, 2025. Dkt. #5, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on May 9, 2025. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits her ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate whether the claimant could perform

other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 24, 2020; (2) plaintiff's lumbar degenerative disc disease, status post right finger fracture with residual effects, major depressive disorder, generalized anxiety disorder, bipolar disorder, PTSD, irritable bowel syndrome, and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work except that she can frequently handle and finger bilaterally, occasionally climb ramps and stairs and stoop, occasionally interact with co-workers and supervisors, cannot interact with the public in a customer service setting, can never climb ladders, ropes scaffolds or crawl, and can carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions and tolerate occasional changes in work setting and work processes but cannot tolerate assembly line or production rate pace work or work in tandem; and (5) plaintiff was capable of working as a mail clerk or housekeeper, each of which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.121-135.

Plaintiff argues that the ALJ failed to properly explain her assessment of the opinion of consultative examiner, Kevin Duffy, Psy.D.. Dkt. #12-1, pp.29-31.

The Commissioner responds that the ALJ properly evaluated conflicting medical opinions to determine plaintiff's RFC, which is supported by substantial evidence. Dkt. #13-1, pp.14-18.

Plaintiff underwent a psychiatric evaluation by zoom with Michael Rosenfeld, Psy. D., on December 23, 2022. Dkt. #5, pp.755-758. Plaintiff presented as cooperative, with fair social skills. Dkt. #5, p.756. She was dressed appropriately with satisfactory hygiene. Dkt. 35, p.756. Her thought process was clear and goal directed, however, her affect was constricted and her mood was very down. Dkt. #5, p.756. Her attention and concentration was observed to be mildly impaired due to anxiety and nervousness during the examination. Dkt. #5, p.757. Plaintiff was able to do basic counting and simple calculations, including serial 7s with 2 errors. Dkt. #5, p.757. She was able to name 3 objects for immediate recall and 2 of 3 objects after a five minute delay. Dkt. #5, p.757. She could recite 7 digits forward and 5 digits backward. Dkt. #5, p.757. She appeared to be of average intellect, with fair insight and judgment. Dkt. #5, p.757.

Dr. Rosenfeld opined that plaintiff could understand, remember, and apply simple directions and instructions with no evidence of limitation and could understand, remember and apply complex directions and instruction with mild limitation. Dkt. #5, p.757. She could use reason and judgment to make work-related decisions with no evidence of limitation. Dkt. #5, p.757. Dr. Rosenfeld further opined that plaintiff would have a moderate limitation in her ability to interact adequately with supervisors, coworkers and the public. Dkt. #5, p.757. She would have a mild limitation in her ability

to sustain concentration and perform a task at a consistent pace. Dkt. #5, p.757. She would have no limitation sustaining an ordinary routine and regular attendance at work. Dkt. #5, p.757. She would have a moderate limitation in her ability to regulate emotions, control behavior and maintain well-being. Dkt. #5, p.757. Dr. Rosenfeld determined that plaintiff would have no evidence of limitation maintaining personal hygiene and appropriate attire or being aware of normal hazards and taking appropriate precautions. Dkt. #5, p.758.

The ALJ found Dr. Rosenfeld's opinion persuasive because it was supported by the subjective and objective evidence. Dkt. #5, p.131. Specifically, the ALJ found Dr. Rosenfeld's assessment of moderate limitations consistent with objective clinical findings on mental status examinations showing that the plaintiff presented as pleasant, friendly, and well-groomed, and exhibited a normal mood and affect, and evidence of an improved mood with psychiatric medication compliance, as well as her reports of multiple significant personal relationships and tolerance for public places. Dkt. #5, p.131. The ALJ further determined that Dr. Rosenfeld's opinion for mild limitations sustaining concentration and performing a task at a consistent pace, as well as no limitation in understanding, remembering and applying simple directions, using reasoning and judgment to make work-related decisions, and sustaining an ordinary routine and regular attendance was consistent with her reported ability to drive a motor vehicle, prepare meals, perform multiple household chores, manage her finances, and shop for groceries as well as objective clinical findings on mental status examinations showing intact cognition, recall, attention and concentration. Dkt. #5, pp.131-132.

On February 6, 2023, state agency review examiner L. Dekeon, Ph.D., opined that plaintiff had moderate limitations in interacting with others and adapting or managing herself as well as mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. Dkt. #5, p.129. Dr. Dekeon also determined that plaintiff could perform tasks in low contact settings without significant difficulty, engage in basic, brief, and superficial interactions, and adapt to basic changes in the work setting. Dkt. #5, pp.129-130.

The ALJ found Dr. Dekeon's opinion partially persuasive because it was partially supported by the subjective and objective evidence. Dkt. #5, p.132. Specifically, the ALJ found Dr. Dekeon's opinion that plaintiff could engage in basic, brief, and superficial interactions, could adapt to basic changes in the work setting, and had moderate limitations in interacting with others and adapting or managing herself consistent with the plaintiff's reports of an improved mood with psychiatric medication compliance, multiple significant personal relations, and tolerance for public spaces including the grocery store as well as objective clinical findings on mental status examinations showing that she presented as cooperative, friendly, pleasant, well-groomed, and exhibited a normal mood and affect. Dkt. #5, p.132. In contrast, the ALJ found Dr. Dekeon's opinion that the plaintiff had mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace inconsistent with the plaintiff's reports of difficulty with remembering generally, concentrating generally, maintaining attention for longer than ten minutes, and completing tasks. Dkt. #5, p.132.

Plaintiff underwent a psychiatric evaluation with Kevin Duffy, Psy.D., on August 9, 2023. Dkt. #5, pp.922-926. Dr. Duffy reported that plaintiff was generally cooperative and presented with fair social skills. Dkt. #5, p.923. Her mode of dress was appropriate, with good personal hygiene. Dkt. #5, p.923. Her thought processes were coherent and goal directed. Dkt. #5, p.923. Her affect was somewhat depressed and irritated at times and her mood was somewhat irritable. Dkt. #5, p.924. Plaintiff reported that she felt nervous. Dkt. #5, p.924. Her attention and concentration was believed to be at least mildly impaired secondary to anxiety and nervousness in the evaluation. Dkt. #5, p.924. Plaintiff was able to count and perform simple calculations but was unable to perform serial 7s or serial 3s. Dkt. #5, p.924. Plaintiff's recent and remote memory skills were also believed to be mildly impaired secondary to anxiety and nervousness. Dkt. #5, p.924. Plaintiff was able to name 3 objects immediately and after about 5 minutes. Dkt. #5, p.924. She was able to perform the digits forward task at 4 numbers and was unable to perform the digits backward task. Dkt. #5, p.924. Her cognitive function was believe to be about average, with fair insight and judgment. Dkt. #5, p.924.

Dr. Duffy's medical source statement found

> no evidence of limitation in the [plaintiff's] ability to understand, remember, and apply simple directions and instructions. There is evidence of marked limitation in the [plaintiff's] ability to understand, remember, and apply complex directions and instructions. There is evidence of marked limitation in using reason and judgment to make work related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a consistent pace. There is evidence of moderate limitation in sustaining an ordinary routine and regular attendance at work. There is

> evidence of marked limitation in regulating emotions, controlling behavior, and maintaining well being. There is no evidence of limitation in maintaining personal hygiene and appropriate attire. There is evidence of moderate limitation in the [plaintiff's] ability to be aware of normal hazards and take appropriate precautions.

Dkt. #5, p.925.

The ALJ found Dr. Duffy's opinion unpersuasive because it was not supported by the subjective and objective evidence. Dkt. #5, p.132. Specifically, the ALJ found Dr. Duffy's marked limitations in using reason and judgment to make work related decisions, interacting adequately with supervisors, co-workers, and the public, sustaining concentration and performing a task at a consistent pace, and regulating [emotions], controlling behavior, and maintaining well-being inconsistent with evidence of multiple activities of daily living, evidence of effective psychiatric treatment, evidence of significant personal relationships, as well as mental status examinations showing that the plaintiff presented as cooperative, friendly, well-groomed, and exhibited normal mood and affect and intact cognition, recall, attention, and concentration. Dkt. #5, p.132.

On September 12, 2023, state agency review examiner, M. Butler, Ph.D., opined that plaintiff had moderate limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself as well as mild limitations in understanding, remembering, or applying information. Dkt. #5, p.198. Dr. Butler further opined that plaintiff has the capacity to perform skilled and unskilled work tasks with limited superficial contact with the public and other employees. Dkt. #5, p.198. The ALJ found Dr. Butler's opinion partially persuasive because it was partially

supported by the subjective and objective evidence. Dkt. #5, p.132. Specifically, the ALJ found Dr. Butler's opinion for unskilled tasks and moderate limitations in concentrating, persisting, or maintaining pace consistent with objective clinical findings on mental status examinations showing normal cognitive functioning, recall, attention, and concentration as well as evidence of multiple activities of daily living. Dkt. #5, p.132. In contrast, the ALJ found Dr. Butler's opinion for mild limitations in understanding, remembering, or applying information inconsistent with reports of difficulty remembering including short term memory deficits and completing tasks. Dkt. #5, p.132.

The ALJ's assessment of Dr. Duffy's opinion as unpersuasive fails to recognize plaintiff's apparently deteriorating mental state at the time of his consultative examination. In contrast to the subjective and objective evidence predating Dr. Duffy's consultative examination, the Court notes that on January 10, 2023, plaintiff attended an internal medicine consultative examination with Nikita Dave, M.D., who reported that it was extremely difficult to understand plaintiff's history because she would state one thing and when asked to clarify, would state something completely tangential. Dkt. #5, p.789. On February 17, 2023, plaintiff was noted to be hyperverbose throughout her physical therapy session with Hand & Rehabilitation Specialists, PLLC, requiring redirection towards treatment. Dkt. #5, p.938. Upon neurosurgical evaluation by Rachel Lamarca, FNP, at UBMD on March 29, 2023, June 12, 2023, and December 5, 2023, plaintiff was noted to be very scattered in her thoughts and frequently required to be redirected. Dkt. #5, pp.861, 947, 971.

At her first session with psychotherapist Deryck Thompson on August 5, 2023, plaintiff was noted to "speak extremely tangential such that nearly every thought remains incomplete." Dkt. #5, p.1043. Plaintiff's therapist reported that it was incredibly difficult to follow plaintiff's story or make interpretations of her concerns. Dkt. #5, p.1043. Plaintiff was unable to focus on developing goals for therapy. Dkt. #5, p.1043. On September 26, 2023, plaintiff was reported to speak "very tangentially," moving "from thought-to-thought without transitioning." Dkt. #5, p.1063. On October 17, 2023, plaintiff continued to monopolize the session, speaking "tangentially such that very few of her thoughts/sentences have an end point." Dkt. #5, p.1059.

On November 6, 2023, plaintiff's therapist reported that plaintiff spent the majority of the session rambling, displaying "tangential thinking with a clear lack of boundaries in her thought content or conceptualizations, such that nearly every thought bleeds into the next without clearly finishing the initial thought rendered." Dkt. #5, p.1055. Plaintiff rambled "about the many lawsuits she has in place, among them are lawsuits directed at her landlord, her ex, her children's daycare, her former job and others," with references to "her rights being infringed upon." Dkt. #5, p.1055. Psychotherapy notes from November 27, 2023 report that the police do not believe or respond to plaintiff when she calls because she has called them so many times before. Dkt. #5, p.1012.

Psychotherapy notes from January 8, 2024 document tangential and circumstantial communication, as well as plaintiff's admission that she has been

experiencing racing thoughts that can keep her awake for days at a time. Dkt. #5, p.1021. Plaintiff's therapist documented:

> Due to the extent of [plaintiff's] admission today and her tangential stream of communication, it is impossible to document everything that [plaintiff] said in our session today. In fact, some of the material the [plaintiff] presents was so quickly uttered and outlandish, it is impossible to determine what is significant or figural in [plaintiff's] life currently or formerly.

Dkt. #5, p.1022. On January 29, 2024, plaintiff was documented to be very confrontational and threatened legal retaliation against the psychotherapy practice and her therapist. Dkt. #5, p.1030.

Given the numerous providers who documented the apparent deterioration of plaintiff's condition for a duration of more than a year prior to the ALJ's decision, yet subsequent to the rendering of medical source opinions upon which the ALJ relied, the Court deems it appropriate to remand this matter for further consideration of plaintiff's mental RFC. *See Rosario v. Kijakazi*, 20-CV-5490, 2022 WL 875925, at *14 (S.D.N.Y. Mar. 15, 2022), *R&R adopted by* 2022 WL 976879 (Mar. 31, 2022).

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is granted and the Commissioner's motion for judgment on the pleadings (Dkt. #13), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED: Buffalo, New York**
**September 30, 2026**

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**